**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE CABRAL, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br>  v.<br><br>CURTSY, INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Nicole Cabral ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Curtsy, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Curtsy, Inc., a California-based company which owns and operates the Curtsy website and app, a peer-to-peer app for buying and selling secondhand clothing, has nickel and dimed online purchasers in violation of various state consumer protection laws.

2. Whenever a consumer visits www.curtsyapp.com, or the Curtsy app on her smartphone and selects an item for purchase, they are not shown the total cost upfront. Instead, consumers are quoted an artificially low price, only for Defendant to sneak in a mandatory "Service Fee" (the "Fee") on subsequent screens. This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

3. By analogy, if consumers were to walk into a brick-and-mortar clothing store, saw a dress they like for $99.00, pulled the tag and took it to the checkout counter, they would expect to pay $99.00 to the store, plus sales tax to the government. If, once consumers reached the checkout counter, they noticed in fine print on the credit card pad that they would *also* be charged an extra "Service Fee" for the service of having the tag's barcode scanned and their payment being processed, they would reasonably be outraged. And yet this is exactly what Defendant does every day through its online marketplace.

4. This practice is known as drip pricing. "Businesses engage in drip pricing by advertising products at artificially low headline price and then disclosing additional charges later in the buying process." *Harvey v. World Mkt., LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *1 (N.D. Cal. May 9, 2025). Drip pricing has long violated various state laws. "California banned bait and switch in consumer transactions when it passed the Consumers Legal Remedies Act (the 'CLRA') in 1970." *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1148 (N.D. Cal. 2025) (citation omitted). "A common form of bait and switch is drip pricing." *Id*.

5.    That said, in recent years, given the proliferation of drip pricing on online e-commerce platforms, various states, including California and Massachusetts, began passing laws specifically prohibiting drip pricing. In California for example, legislators expressed concerns that "Consumers [subject to drip pricing] are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online." *Mansfield*, 802 F. Supp. 3d at 1148 (quoting California Senate Rules Committee Analysis (Sept. 11, 2023) (S.B. 478)). So effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges other than either" "[t]axes or fees imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." A year later, Massachusetts likewise passed regulations broadening its Consumer Protection Act to specific prohibit drip pricing. Effective September 2, 2025, 940 CMR 38.04 makes it an "unfair and deceptive practice" for a person to "misrepresent[] or fail[] to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product."

6.    For these reasons, Plaintiff seeks relief in this action individually and on behalf of all other purchasers for damages, reasonable attorneys' costs and fees, and injunctive relief under California Civil Code §§ 1770(a)(29)(A), 1770(a)(9) and statutory damages under Massachusetts General Laws ch. 93A, § 9(3).

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

8.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district, at 2255 Van Ness Avenue, San Francisco, CA 94109.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

**PARTIES**

10.     Plaintiff Nicole Cabral is an individual consumer who, at all times material hereto, was a citizen and resident of Mattapoisett, Massachusetts.

11.     Plaintiff purchased Lululemon Leggings from Curtsy on October 19, 2025. She encountered a purchase flow substantially similar to the one depicted below. She was initially quoted an item price of $21.00 for these leggings, but after clicking through various screens, an additional $2.05 Service Fee was added to her order, raising the total cost she paid to $23.05.

12.     At the time Plaintiff purchased her product, she was not aware that Defendant's practices were unlawful under California or Massachusetts law. Plaintiff was not browsing websites in search of legal violations. Plaintiff was instead browsing because she sincerely intended to purchase products, and she in fact did purchase a product.

13.     Defendant Curtsy, Inc. ("Defendant") is a California corporation with its principal place of business in San Francisco, California. Through its Curtsy website and app, Defendant offers for purchase various clothing items throughout the United States, including in the state of California.

**FACTUAL ALLEGATIONS**

*California's Honest Pricing Law*

14.     Effective July 1, 2024, California enacted California Civil Code § 1770(a)(29)(A), which provides that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either … [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer[]" is unlawful.

15.     According to the California Attorney General's Office, "[a] business can exclude shipping charges, but not handling charges" or other incidental items bundled with shipping.[1] "Like any other mandatory fee or charge, a handling charge must be included in the advertised price."[2]

---

[1] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.
[2] *Id*.

To that end, the only non-governmental charge a business can impose at a later stage of the transaction is "Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii).

16. As Senator Bill Dodd, a co-author of SB 478, stated in describing this new law: "Californians are fed up with dishonest fees being tacked on to seemingly everything … It's an underhanded trick to boost corporate profits at the expense of those who can least afford it. Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front."[3]

17. And according to Attorney General of California Rob Bonta, "[w]e can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace."[4]

***Massachusetts' Unfair and Deceptive Fees***

18. Under Massachusetts' Consumer Protection Act (MCPA),  "unfair or deceptive acts or practices in the conduct of any trade or commerce are … declared unlawful."  Mass. Gen. Laws Ann. ch. 93A, § 2(a). The MCPA provides that the state's "attorney general may make rules and regulations interpreting" what is an unfair or deceptive act or practice under "paragraph (a) of this section."  Mass. Gen. Laws Ann. ch. 93A, § 2(c).

19. In March 14, 2025, the Massachusetts Attorney General finalized the "*Unfair and deceptive fees*" regulation, 940 CMR 38.00 *et seq*., to specifically identify drip pricing as an unfair and deceptive practice under the MCPA.[5]

20. 940 CMR 38.04 provides that, "effective September 2, 2025," it "shall constitute an unfair and deceptive practice under G.L. c. 93A, §2" to "misrepresent[] or fail[] to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product." 940 CMR 38.04(1).  "Total

---

[3] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (last visited Dec. 24, 2024).

[4] *Id.*

[5] COMMONWEALTH OF MASSACHUSETTS, *Regulation: 940 CMR 38.00: Unfair and deceptive fees*, https://www.mass.gov/regulations/940-CMR-3800-unfair-and-deceptive-fees.

Price" is defined as "[t]he maximum price a consumer must pay for a Product, inclusive of all fees, charges, or other expenses."  940 CMR 38.03. Also, 940 CMR 38.04(2) says that "misrepresenting or failing to disclose Clear and Conspicuously, at the time of the initial presentation of the Total Price of any Product" "the nature, purpose, and amount of any fees, charges, or other expenses that would be imposed on the transaction due to the purchase of that Product (excluding Shipping Charges and Government Charges)" is an unfair and deceptive practice.

***The Curtsy App's Hidden Fee***

21.    When consumers download the Curtsy App and open it for the first time, the first screen they see asks them whether they wish to be a shopper, a seller, or both. The background of the screen is a rolling video clip showing various young women wearing various stylish clothes in a variety of scenarios.

  

***Figure 1A***                ***Figure 1B***                ***Figure 1C***

22.    Once a consumer makes a selection, Curtsy App then begins a survey asking them several questions. Once the consumer completes the survey, they are taken to the app's digital storefront, which gives them a variety of items they can choose to buy. Each item has a Buy Now price listed on this screen which does not include any fees. A user can view more items by scrolling down the screen. Alternatively, the user can search for a particular item by clicking on the magnifying glass icon at the bottom of the screen.



*Figure 2*

23.    After a consumer clicks on an item from this general screen or the search result screen, they are taken to a product page, which again lists the same advertised price *without any fees*.




*Figure 3A*                                         *Figure 3B*

24.     This product screen gives consumers the option to either make an offer (below the product's listed price), to Buy with Apple Pay (for consumers using the iOS version of the App). While it is not immediately visible, if consumers scroll down, there is an additional option to add the product to their bag. *See* Figure 3B. However, no matter what option a consumer chooses, the Curtsy App will charge them an additional "Service Fee."

25.     If a consumer clicks the Buy with Apple Pay button, the iPhone will automatically fill in their contact details, increase the cost quoted to the consumer, and n*ever notify the consumer that a Service Fee was added at all*. A consumer can simply double click their iPhone button and

the Service Fee will be charged to the consumer even though they would have never been given a notice that any fee would be charged at all.



***Figure 4***

26.     If a consumer does happen to notice the subtle cost increase, and happens to scroll away from this Apple Pay screen, the hidden portion of the screen will reveal that Curtsy added a $5.87 "Service Fee" for this product, in addition to sales taxes.



***Figure 5***

27.    But as a practical matter, only a small proportion will ever feel the need to investigate the Curtsy App to discover this hidden charge. Most consumers will likely have no reason to reach Figure 5, because they would either not notice the price increase on Figure 4 at all, or assuming they did notice the price increase, would reasonably assume the increase was simply attributable to taxes. Indeed, website and app designers like Curtsy purposefully design their platforms to be as easy and frictionless as possible, precisely so that consumers who purchase items

*do not notice the fine print.* In the above example, a consumer can purchase this item in a mere second or two, by simply clicking the Apple Pay button once on Figure 3, and double tap an iPhone's side button on Figure 4. This is far faster than a consumer could ever purchase an item in a brick-and-mortar store, where they would need to take the item off the rack, walk over to the checkout counter, wait in line, and have the store clerk process the transaction for them.

28.     Consumers who make an offer or click the Add to Bag button, on the other hand, receive a belated disclosure of its Curtsy's Service Fee. Consumers clicking the Add to Bag button are taken to a Your Bag screen, where a Service Fee is then disclosed. *See* Figure 6.



*Figure 6*

29.    Consumers who choose the Make Offer button, on the other hand, are first prompted to make their own offer. They can either make an offer based on pre-selected options or type in their own custom offer. Either way, this page displays the consumer's bid price, but fails to disclose Defendant's Service Fee.





*Figure 7A*                                      *Figure 7B*

30.    It is only after a Consumer clicks the "Continue" button on Figure 7A or the Make Offer button on 7B that the app discloses to consumers Curtsy will be charging its own additional mandatory Service Fee on top of consumer's bid price.



*Figure 8*

***The Curtsy Website's Hidden Fee***

31.    The Curtsy website likewise fails to disclose its Service Fee on initial price displays.

32.    When consumers reach the main page of the Curtsy website, curtsyapp.com, they are likewise shown a variety of items they can choose to buy. These products all contain price displays which do not include any Service Fee. A consumer can either select an item from this page, search for items on the top search bar, or look for products under Curtsy's various categories at the top of the page (*i.e.* Sale, Featured, Clothes, Dresses, Activewear, Swim, Shoes, Accessories, Bags, or Jewelry).



*Figure 9*

33.     If a shopper selects a particular item from the main page, a search results page, or a category page, they are taken to an individual product page. On that product page, if the consumer selects to purchase an "individual" product, the price is again displayed without a Service Fee. A consumer can either choose to "Make [an] Offer," Buy Now, or click the G Pay button.



*Figure 10*

34.    If a consumer selects the G Pay button, the price of the product again increases, but Defendant's Service Fee is not disclosed, and a consumer may buy the product without having ever seen Defendant's Service Fee. If a consumer selects the Buy Now or Make Offer button, however, Defendant later discloses a Service Fee that ends up being applied to the order.



*Figure 11*

35.    In other words, on both the Curtsy App and the Curtsy Website, the total price of a particular product is *never* disclosed on the *initial* price display. Thus, Defendant is violating the Massachusetts Consumer Protection Act by "failing to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product." 940 CMR 38.04(1). And on these initial price display screens, Defendant is likewise "[a]dvertising, displaying, or offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

36.    The Service Fee Curtsy levies on consumers is mandatory because there is *no way* to purchase a product on the website or app without paying the Fee.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                                 14

## CLASS ALLEGATIONS

37.    **Nationwide Class**: Plaintiff Cabral seeks to represent a class defined as all individuals in the United States who purchased items using Defendant's website or App on or after April 1, 2023 and paid a "Service Fee" (the "Nationwide Class"). Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

38.    **Nationwide Subclass**: Plaintiffs Cabral also seeks to represent a subclass defined as all individuals in the United States who purchased items using Defendant's website or app on or after July 1, 2024 and paid a "Service Fee" (the "Nationwide Subclass"). Excluded from the Nationwide Honest Pricing Law Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

39.    **Massachusetts Class:** Plaintiff Cabral seeks to represent a class defined as all individuals in Massachusetts who purchased items using Defendant's website or app on or after April 1, 2023 and paid a "Service Fee" (the "Massachusetts Class"). Excluded from the Massachusetts Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

40.    **Massachusetts Subclass:** Plaintiff Cabral seeks to represent a class defined as all individuals in Massachusetts who purchased items using Defendant's websites on or after September 2, 2025 and paid a "Service Fee" (the "Massachusetts Subclass"). Excluded from the Massachusetts Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

41.    Members of the Classes are so numerous that their individual joinder herein is impracticable. Members of the Classes likely number in the thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

42.    Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members. Common legal and factual

questions include, but are not limited to, whether Defendant failed to include all mandatory fees or charges when advertising, displaying, or offering a price for the items for purchase, in violation of California Civil Code § 1770(a)(29)(A), and whether Defendant advertised goods or services with intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9). The claims of the named Plaintiff are typical of the claims of the Classes in that the named Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to include all mandatory fees or charges in the advertising, displaying, or offering a price for the items, throughout the online item purchase process.

43.    Plaintiff  is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

44.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**California Civil Code § 1770(a)(29)(A)**
**(On Behalf of the Nationwide Subclasses)**

45.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Subclass against Defendant.

47. Defendant owns, operates, or controls the Curtsy website and app, which are all places where consumers can purchase various items for personal and household use.

48. Defendant violated California Civil Code § 1770(a)(29)(A) by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" on the product screens depicted in this complaint.

49. Defendant's "Service Fee" is a "mandatory fee[] or charge[]" that must be paid in order to purchase the item. Cal. Civ. Code§ 1770(a)(29)(A).

50. Plaintiff and Subclass members were harmed because they paid Defendant's unlawful Service Fee. Because the total cost was not disclosed to Plaintiff and Subclass members at the beginning of the purchase process, the resulting Service Fee that was applied was unlawful pursuant to California Civil Code § 1770(a)(29)(A).

51. Plaintiff and Subclass Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff and Subclass Members could not shop around for items at other retailers like eBay, Mercari, or the RealReal, to name a few. As such, Plaintiff and Subclass Members had no way of knowing whether they were getting the best deal that their money could buy. By hiding its Service Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff and Subclass members to overpay.

52. Plaintiff and Subclass members relied on Defendant's false and misleading representations that the cost of its products did not include the Service Fee in choosing to purchase its products.

53. On February 27, 2026, Defendant received a letter via certified mail notifying it that it violated Cal. Civ. Code §§ 1750, *et. seq.*, specifically including subsections 1770(a)(9) and (a)(29)(A) and Mass Gen. Laws ch. 93A, § 2.  The notice letter was sent on behalf of Plaintiff and all other similarly situated persons.  The letter provided notice that Defendant's drip pricing

practices are deceptive acts in violation of the CLRA and MCPA. As of the date of this Complaint, Defendant has not issued any response or made any offer to make Plaintiff or consumers whole.

54.     On behalf of herself and members of the Nationwide Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

<u>COUNT II</u>
**California Civil Code § 1770(a)(9)**
**(On Behalf of the Nationwide Class)**

55.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

57.     Defendant violated California Civil Code § 1770(a)(9) by "[a]dvertising goods … with intent not to sell them as advertised." Specifically, Defendant advertised and expressly represented the price of their products with intent not to sell them at the advertised price.

58.     Plaintiff and Class Members were harmed because they paid Defendant's unlawful Service Fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

59.     Plaintiff and Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff and Class Members could not shop around for items at other retailers like eBay, Mercari, or the RealReal, to name a few. As such, Plaintiff and Subclass Members had no way of knowing whether they were getting the best deal that their money could buy. By hiding its Service Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff and Subclass members to overpay.

60.     Plaintiff and Class members relied on Defendant's false and misleading representations of the advertised cost of its products in choosing to purchase its products.

61.     As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the items on its Website which are false due to the uniform imposition of the Fee described herein.

Indeed, Defendant concealed the true price of the items, and the true nature of the Fee it was charging on each purchase, from Plaintiff and Class members.

62.     No reasonable consumer would expect the price advertised by Defendant to include an unlawful Fee in addition to lawful sales tax and shipping costs. *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 845-46 (E.D. Cal. 2024) ("Plaintiffs have sufficiently alleged [Defendant] advertises one price for its products while also surreptitiously charging a higher price by adding the Service Fee. Thus, Plaintiffs have sufficiently alleged [Defendant] advertises their goods with the intent not to sell them as advertised.").

63.     Defendant willfully employed a scheme designed to advertise a price that is not the true cost of its products, and did so willfully, wantonly, and with reckless disregard for the truth.

64.     On February 27, 2026, Defendant received a letter via certified mail notifying it that it violated Cal. Civ. Code §§ 1750, *et. seq.*, specifically including subsections 1770(a)(9) and (a)(29)(A) and Mass Gen. Laws ch. 93A, § 2.  The notice letter was sent on behalf of Plaintiff and all other similarly situated persons.  The letter provided notice that Defendant's drip pricing practices are deceptive acts in violation of the CLRA and MCPA. As of the date of this Complaint, Defendant has not issued any response or made any offer to make Plaintiff or consumers whole.

65.     On behalf of herself and members of the Nationwide and California Classes, Plaintiff seeks to enjoin the unlawful acts and practices described herein, damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

**COUNT III**
**G.L. c. 93A, § 2**
**(On Behalf of the Massachusetts Class and Subclass)**

66.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the Massachusetts Class and Subclass against Defendant.

68.     Defendant violated 940 CMR 38.04, which makes it an unfair and deceptive practice under G.L. c. 93A, § 2 to "misrepresent[] or fail[] to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation

thereafter, the Total Price of that Product." Specifically, on various screens prior to the checkout, Defendant advertised and displayed the price of its products without including its Service Fee— which was mandatory on all transactions.

69. Because Defendant violated 940 CMR 38.04, it committed an unfair and deceptive practice under G.L. c. 93A, § 2.

70. Even separate and apart from 940 CMR 38.00, Defendant's belated or non-disclosure of its Service Fee constitutes an unfair and unlawful practice. Courts interpreting the MCPA have long held that charging consumers inadequately disclosed fees beyond what was initially represented to them constitutes an unfair and deceptive practice under Chapter 93A. *See, e.g.*, *Dill v. Am. Home Mortg. Servicing, Inc.*, 935 F. Supp. 2d 299, 306 (D. Mass. 2013) (inadequately disclosed fees for loan modification was deceptive and unfair); *Bureau of Consumer Fin. Prot. v. Commonwealth Equity Grp., LLC*, 752 F. Supp. 3d 378, 403 (D. Mass. 2024) (imposition of cash advance fees was deceptive and unfair).

71. Plaintiff and Massachusetts Class and Subclass Members were harmed because they paid Defendant an unlawful Service Fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

72. Plaintiff and Massachusetts Class and Subclass Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff and Massachusetts Class and Subclass Members could not shop around for items at other retailers like eBay, Mercari, or the RealReal, to name a few. As such, Plaintiff and Massachusetts Class and Subclass Members had no way of knowing whether they were getting the best deal that their money could buy. By hiding its Service Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff and Massachusetts Class and Subclass members to overpay.

73. On February 27, 2026, Defendant received a letter via certified mail notifying it that it violated Cal. Civ. Code §§ 1750, *et. seq.*, specifically including subsections 1770(a)(9) and (a)(29)(A) and Mass Gen. Laws ch. 93A, § 2.  The notice letter was sent on behalf of Plaintiff and all other similarly situated persons.  The letter provided notice that Defendant's drip pricing

practices are deceptive acts in violation of the CLRA and MCPA. As of the date of this Complaint, Defendant has not issued any response or made any offer to make Plaintiff or consumers whole.

74. On behalf of herself and members of the Massachusetts Class, Plaintiff seeks to obtain statutory damages and reasonable attorneys' fees and costs. G.L. c. 93A, § 9.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Classes, prays for judgment as follows:

A. For an order certifying the Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Subclasses and Plaintiff's attorney as Class Counsel to represent the Classes and Subclasses;

B. For an order declaring that Defendant's conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff and the Classes and Subclasses on all counts asserted herein;

D. For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 1, 2026                                **BURSOR & FISHER, P.A**.

By:   /s/ *Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596

---

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                 22